The plaintiff was the owner of an ice plant near the Union Depot in the city of Raleigh, which was destroyed by fire on 29 *Page 552 
August, 1893. Plaintiff alleges that this burning was caused by the negligence of the defendant road. The statement of the case on appeal shows the following facts as admitted or testified to by witnesses:
The plaintiff was the owner of the ice plant referred to in the pleadings; it was located about twenty feet from the track of the defendant's road and on the north side thereof, and was about three (883) hundred feet from the Union Depot in the city of Raleigh, it was constructed in part on the defendant's right of way under a registered lease from the defendant to plaintiff, and in part on the lands of William Boylan. It was almost entirely destroyed by fire about 8:30 or 9 o'clock on the evening of 29 August, 1893. It was dry weather, and the wind at that time was blowing directly across the defendant's roadbed from the south to the north, towards the plaintiff's factory. About the hour above named the Atlanta Special, one of the defendant's trains, pulled out of the Union Depot. It was behind schedule time. Charles Locklear, the fireman of plaintiff's engine, was sitting in front of his engine in the engine-room of the factory when the Atlanta Special left the depot. It started off faster than usual. It made a louder noise exhausting than usual. This attracted his attention. He walked to the door of the engine-room. He saw that it was running faster than usual, to wit, about twenty miles an hour. As it approached and passed the factory it emitted large quantities of sparks of the size of his little finger. The wind blew the smoke and sparks from defendant's train in the direction of the factory. He could not see from his engine-room whether any of the sparks fell on the factory. The fire was discovered fifteen minutes after the train passed.
A witness for plaintiff, H. E. Ford, who was night watchman at Jones Powell's factory, was between the depot and the factory, and about halfway between the two when the Atlanta Special started out. He testified that the factory was discovered on fire between 8 and 9 o'clock of the evening named; that the Atlanta Special, a train of the defendant, passed out about fifteen minutes before; it was (884) running unusually fast; sparks were going out of it unusually heavy from the time it started from the depot till it passed the factory; the sparks were about the size of a man's finger, and there was a great quantity of them; the wind was blowing across the defendant's railroad towards the factory, and the smoke and sparks from defendant's locomotive engine drifted towards factory as the train passed it; fire was discovered on the factory about fifteen minutes after the Atlanta Special passed; it was in the southwest corner next to the railroad; the train was running about twenty miles an hour as it passed the factory.
There was no building on the south side of the defendant's track within several hundred yards of the factory, by which the fire could be *Page 553 
communicated to it. No other train had passed the factory that evening within an hour and a half before the Atlanta Special passed.
The engine-room of the plaintiff's factory was provided with a brick floor. The smokestack of the boiler was sixty feet high, and did not emit sparks, the fuel used being coal and the engine being stationary and not exhausting. Besides, any sparks it might have emitted at the time of the fire would have been driven by the wind in an opposite direction to the corner in which the fire was discovered, the boiler-room of the plaintiff's plant being in the southeast corner, while the fire began in the southwest.
One Branch, the ice-maker, discovered the fire, and at once notified Locklear, the fireman. Locklear seized buckets and, accompanied by Branch, ran up the ladder leading to the tank filled with water, but found that they could not reach the fire. He descended, ran to the fire box to send in the alarm, but found another attending to it.
It was not possible for the factory hands to extinguish the fire. (885) It had caught in a loft over the weighing room. There was a small space, two or three inches wide, on a line with the floor of the loft and under the eaves of the factory roof. It was left there for the purpose of ventilation. The eaves of the roof projected over and in the main covered this open space. The fire, when first seen, was in the southwest corner of the loft next to the railroad and near this open space under the eaves. There was nothing in the loft. There was no door or window in it, and no one could approach it and set it afire in this particular corner. There was no ladder or steps leading up to the loft.
The fire burned northward, away from the track of the defendant's road, destroying the center and rear of the building, and leaving a part of the front intact.
The front roof of the factory was iron, and the center and rear roof was asbestos, both practically fireproof. The roof of the factory could be reached through the engine-room. Locklear did not leave his engine-room when the engine passed to look for fire on the factory. No special precautions, except as herein above set forth, were taken to prevent fire. The same train and other trains of defendant had on previous occasions emitted sparks when passing the factory, and no fire followed.
After the fire alarm was sent in the city fire department force arrived and undertook to extinguish the flames, playing mostly on the front of the plant, but failed to accomplish it.
Perry, the superintendent, usually remained at the factory until 11 o'clock at night, and always went over it before leaving, to see everything was in order. On the evening of the fire he was sick; and after looking over the factory as usual, and finding nothing wrong, went home about thirty minutes before the fire. Hearing the alarm, he (886) *Page 554 
started down-down, met Locklear, learned the factory was burning, and hastened on, and with others endeavored to put out the fire.
When the plaintiff rested, having introduced evidence of the foregoing tenor, the defendant introduced no evidence, but moved to nonsuit the plaintiff under chapter 109, Acts of 1897. The court sustained defendant's motion, and the plaintiff appealed.
The judgment of nonsuit can only be sustained upon one of two grounds — that the plaintiff failed to make a case against the defendant, or that plaintiff had shown such contributory negligence as to discharge the defendant from liability.
The case was argued in this Court almost entirely upon the ground of contributory negligence on the part of plaintiff, but the case on appeal does not show upon what grounds the judgment of the court was put. In our opinion it cannot be sustained upon either ground.
If the doctrine of "res ipsa loquitur" does not apply, the issue of contributory negligence was upon the defendant, and to find there was contributory negligence on the part of the plaintiff would be an affirmative finding of facts and not for the court. S. v. Shule,32 N.C. 153; S. v. Allen, 48 N.C. 257; Spruill v. Ins. Co.,120 N.C. 141; Hardison v. R. R., 120 N.C. 492; Bank v. School Com.,121 N.C. 107; White v. R. R., 121 N.C. 484.
It was contended that as this case is upon admitted facts and evidence offered by plaintiff it is distinguishable from the cases cited, that is a demurrer to the evidence, which admits it to be true, and there is nothing for the jury to find, and it thus becomes a question of law for the court. This seems to be a sound proposition of law, and may distinguish (887) this case from those cited, unless reasonable men might fairly and reasonably draw different conclusions from such evidence. If this is so, then such evidence should be submitted to the jury. Hinshawv. R. R., 118 N.C. 1047. If there was no evidence of contributory negligence it was error to nonsuit the plaintiff upon the ground of contributory negligence.
For the purpose of this case it is only necessary for us to say that in our opinion the record as now presented does not show such facts as authorized the court to decide as a question of law that plaintiff had been guilty of contributory negligence.
But, as it is not stated upon what ground the judgment of nonsuit was based, it is necessary that we should examine the other ground — that of negligence on the part of the defendant.
We are of the opinion that the doctrine of "res ipsa loquitur" does not apply to this case. That doctrine only applies where the injury — the thing done — speaks for itself, and establishes the fact that the defendant was the author of the injury. That if it is necessary to introduce *Page 555 
extrinsic evidence to establish the fact that defendant caused the injury, that doctrine does not apply. 1st Shear. Red. on Law of Negligence, secs. 59 and 60.
But where the plaintiff alleges that he has been injured by fire
originating from sparks issued from the defendant's locomotive, "he must not only prove that the fire might have proceeded from the defendant's locomotive, but must show by reasonable affirmative evidence that it did so originate."
"It is not necessary, however, to prove this beyond a reasonable doubt. Evidence showing that the engine emitted sparks in size and number sufficient to account for the fire, and flying near the (888) building or field, which actually caught fire, and that the fire was discovered very soon afterwards, no other cause being known, is sufficient to go to the jury on this point." 2 Shearman Red., supra, sec. 675.
When the origin of the fire is fixed on the defendant the presumption then arises that it was guilty of negligence and the burden rests upon it to show that it used approved appliances in the operation of its road to prevent the emission of sparks and cinders, or that the damage was caused by some extraordinary cause over which defendant had no control." 2 Shearman Red., supra, sec. 676. And this is the rule in North Carolina.Lawton v. Giles, 90 N.C. 374; Ellis v. R. R., 24 N.C. 138; Aycock v. R.R., 89 N.C. 321.
Understanding as we do, instructed as we are by these authorities, we cannot hold that there was not such evidence of negligence on the part of the defendant as should not have been submitted to the jury. As the jury might take a different view of the evidence to what the court does, the plaintiff should not be nonsuited under this statute except in plain cases of failing to make out a case. The plaintiff should not have been nonsuited.
This case is another evidence of the unwisdom of the act of 1897 establishing this practice. About one-half of the appeals from the Fourth District and a very great number from other districts come to us upon appeal from rulings of the courts under this statute. A large number of them if not a majority go back for a new trial. Whereas, but for this statute, these cases would have been tried upon their merits, and in all probability that would have been the end of them. The Legislature is composed for the most part of plain, intelligent farmers and business men, who wish to do right. But they know nothing of (889) legal procedure, and we have no idea that any of them drew this bill or that they would have voted for it if they had known the vast amount of harm they were inflicting upon their constituents. It must have been drawn and promoted by some lawyer or lawyers who wanted to speculate upon the opinion of the court — to try cases by technicalities *Page 556 
instead of upon their merits — taking "two bites at a cherry." The practice it displaced was the result of judicial wisdom and experience for the past century, and should not have been disturbed without some better reason for doing so than appears to have been for the passage of this act. We have refrained from expressing our opinion on the facts as far as we could, as the case goes back for a new trial.
Error. New trial.
Cited: Sims v. Lindsay, ante, 681; Commission Co. v. Porter, ante, 698;Willis v. R. R., post, 908; Whitley v. R. R., post, 989; Johnson v. R. R.,post, 958; Roscoe v. Lumber Co., 124 N.C. 45; Gates v. Max, 125 N.C. 140;Neal v. R. R., 126 N.C. 641; Hosiery Co. v. R. R., 131 N.C. 239;Deppe v. R. R., 152 N.C. 83; Maguire v. R. R., 154 N.C. 386; Currie v.R. R., 156 N.C. 423; Hardy v. Lumber Co., 160 N.C. 118.