WARD B. COLLINS AND WIFE, LORRAINE C. COLLINS v. CALDWELL FURNITURE COMPANY, INC.

No. 7225SC594

(Filed 20 December 1972)

1. **Negligence § 32— circumstantial evidence**

    Negligence may be inferred from facts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant was guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence.

2. **Fires § 3; Negligence § 32— fire case — circumstantial evidence**

    Actual causation may be proved by circumstantial evidence, and this principle is equally as true in fire cases as in any other tort liability case.

3. **Fires § 3; Negligence § 29— prima facie case of negligence**

    When the plaintiff shows his property was injured by fire which had its origin with the defendant, such showing makes out a *prima facie* proof of the defendant's negligence.

4. **Fires § 1; Negligence § 29— defendant's fire as proximate cause of plaintiffs' fire**

    Where plaintiffs showed that defendant started a fire on its property which defendant was under a duty to control, it was a question

for the jury to decide whether plaintiffs' fire was the proximate result of defendant's fire.

5. **Fires §§ 1, 3; Negligence § 29— sufficiency of evidence to submit issue of negligence to jury**

Since common experience has established that a large conflagration in an open field offers an inherent and serious hazard of fire to adjoining areas if not properly supervised and since it is not improbable, unnatural, unreasonable or unforeseeable that fire is a consequence of a serious fire hazard, it would not amount to mere conjecture on the part of the jury to conclude that large sparks from defendant's burning of trash on its lot caused the fire in plaintiffs' building which resulted in substantial damage to the structure and equipment therein.

APPEAL by plaintiffs from *Grist, Judge,* 17 January 1972 Session of CALDWELL Superior Court.

Plaintiffs alleged that defendant negligently allowed sparks and burning debris from a trash fire behind its factory to fall on plaintiffs' building, igniting highly flammable material used in plaintiffs' furniture manufacturing business which destroyed a substantial part of plaintiffs' building and equipment therein.

At the close of plaintiffs' evidence, defendant's motion for directed verdict was granted for that negligence and proximate cause were not shown.

*Wilson & Palmer by George C. Simmons III for plaintiff appellants.*

*Hedrick, McKnight, Parham, Helms, Warley & Kellam by Philip R. Hedrick and Richard T. Feerick for defendant appellee.*

CAMPBELL, Judge.

Upon motion for directed verdict, all evidence which tends to support the plaintiffs' claim must be taken as true and considered in its light most favorable to the plaintiffs, giving them the benefit of every reasonable inference which legitimately may be drawn therefrom. Contradictions, conflicts and inconsistencies are to be resolved in plaintiffs' favor. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47 (1969).

Plaintiffs' evidence, thus viewed, tends to show the following:

1. Plaintiffs' building was located approximately 150 feet from a field behind defendant's building.

2. It was the defendant's custom to burn large quantities of trash paper, wood and veneer scraps in the field behind its building. These fires were always unattended, and burned without attempt on the part of the defendant to control their spreading to other areas. Plaintiffs had called the fire danger to the attention of defendant without satisfaction.

3. On 19 November 1968 the trash pile behind defendant's building consisted of paper and veneer covering an area of about 50 feet by 25 or 30 feet, and piled 10 feet deep. At approximately 3:00 p.m. this trash pile was set on fire by the defendant, and it continued to burn for the remainder of the day.

4. Wind, and heat from the fire, which was burning with large flames rising in height to some 20 or 30 feet, caused large sparks to rise, some of them "the size of your hand up to six by six inches. They were still flaming and falling everywhere, and some of them fell on my property. As a result of this, I watered down the roof and the surroundings."

5. When plaintiff, Ward B. Collins, left his building about 6:00 or 6:30 p.m., the fire on defendant's lot was still burning. The Sawmills Community Volunteer Fire Department was notified that plaintiffs' building was burning at 7:30 p.m. Upon returning from Salisbury, North Carolina, at about midnight, Collins learned that his building had been partially destroyed by fire; and when he arrived at the site of his burned building, he saw that the defendant's trash fire was still burning.

6. Mr. James H. Edwards, an insurance investigator who was accepted by the court as an expert in the field of investigation of fire losses and determination of the origin of fires, investigated the fire in plaintiffs' building, beginning at about 9:30 a.m. on the next day, 20 November 1968. When he arrived at the scene, he observed that the defendant's trash fire was still burning, and he saw flaming debris rise from that fire and fall on adjoining property.

7. Edwards testified that he checked the building for all possible sources of fire, and found that none of the electric wiring and electric motors was defective; that none of the waste cans and rags in the building had burned; and that the heating system of the building was not defective or burned.

8. The major portion of the fire damage was in the finishing room and the spray booth on one end of the building where

the rafters were heavily burned. The spray booth was ventilated by an electric exhaust fan which blew dust and lacquer spray residue out of the building. Part of this dust and lacquer spray was deposited on the outside of the building and on the roof near the vent for the fan.

The witness testified that in his opinion the fire *inside the building* started at the rear of the spray booth where the exhaust fan vented to the outside of the building, and that the fire moved in a downward direction from the roof rafters, while at the same time moving in an outward direction from the back wall of the spray booth toward the finishing room inside the main plant. By examining the cracks in the burned rafters, the expert witness testified that he was able to determine the origin and direction of the fire within plaintiffs' building.

9. The expert witness testified that:

". . . I also examined the area of the roof over the spray booth, and I found evidence of burning on that roof where the exhaust of the spray booth goes outside of the building. . . . The exhaust pipe from the spray booth area is located directly under that portion of the roof. This was a metal roof and I found where there had been some burning on top of it; I found some debris from wood up there which was charred and burned. The entire area of this metal roof showed evidence of having been burned. . . ."

10. On cross-examination the expert further testified that:

". . . I did testify that, in my opinion, the fire in some way started out there, [referring to the outside of the building around the area of the spray booth exhaust fan vent] came down into the spray booth on the side of the vent. The vent was not completely coated and covered with lacquer, thinner or sealer; that is, it was not coated on the outside of the vent, but it was coated on the inside. The roof is here and the ventilator here and the fire came here and not down to the vent. It came from here on the roof down to this point and entered and did not come on down to the vent. . . ."

Although we are unable to tell what the witness was describing with reference to the words "here" and "this point," the testimony does show the witness's opinion that the fire began on the roof of plaintiffs' building and then moved into

the building through the spray booth wall somewhere within the vicinity of the exhaust fan.

The trial court held that this evidence was not sufficient to show negligence of the defendant which was a proximate cause of the plaintiffs' injury. We hold otherwise.

[1] Negligence may be inferred from facts and attendant circumstances, and if the facts proved establish the more reasonable probability that the defendant was guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence. *Drum v. Bisaner*, 252 N.C. 305, 113 S.E. 2d 560 (1960).

[2] Actual causation may be proved by circumstantial evidence, and this principle is equally as true in fire cases as in any other tort liability case. *Simmons v. Lumber Co.*, 174 N.C. 220, 93 S.E. 736 (1917), and the vast multitude of railroad steam locomotive cases reported in this State.

In *Simmons v. Lumber Co., supra,* the court held that evidence that a fire started along defendant's track at a time and place where its steam engine was momentarily standing, which fire ignited trash along the track and spread to the plaintiff's land, was sufficient to support a jury verdict for the plaintiff despite the fact that no witness actually saw sparks coming from the engine at the time.

In *Simmons* it was held that:

"The cause of the fire is not required to be shown by direct and positive proof, or by the testimony of an eyewitness. It may, as we have seen, be inferred from circumstances, and there are many facts like this one, which cannot be established in any other way. It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts, for otherwise presumptive evidence would be excluded. We have held, proof as to the emission of sparks from locomotives or stationary engines to be sufficient for the purpose of showing that a fire was started by them, where no one saw the sparks dropping on the place which was burned, and for the reason that the surrounding circumstances tended to prove that they were the cause of the fire, by reasonable presumption or inference. . . . [The evidence in this case]

Collins v. Furniture Co.

is not merely conjectural or speculative, but is such as war-
ranted the jury in forming a reasonably safe conclusion
that the fire was set out by the engines; there being, in
addition to all this proof, the fact that there was nothing
else there to cause the fire. . . ."

[3] The railroad cases have established the rule that when
the plaintiff shows that his property was injured by fire which
had its origin with the defendant, such showing makes out a
prima facie proof of the defendant's negligence. Further, the
connection of the plaintiff's fire and the defendant's conduct
may be shown by circumstantial evidence. *Ashford v. Pittman,*
160 N.C. 45, 75 S.E. 943 (1912); *Mfg. Co. v. R.R.,* 122 N.C.
881, 29 S.E. 575 (1898).

In the case of *Patton v. Dail,* 252 N.C. 425, 114 S.E. 2d 87
(1960), plaintiff's evidence that his house was completely de-
stroyed by fire which began under the bathroom floor where
the defendant had been soldering water pipes with a torch one
half hour before the fire was discovered was held sufficient
evidence of the defendant's negligence to carry the case to the
jury.

[4] The plaintiffs, having shown that the defendant started
a fire on its property, which fire the defendant was under a
duty to control, it is a question for the jury to decide whether
the plaintiffs' fire was the proximate result of the defendant's
fire. *Hardy v. Lumber Co.,* 160 N.C. 113, 75 S.E. 855 (1912).
The intervention of time or distance between the defendant's
fire and the plaintiffs' fire—for example, that the fire in plain-
tiffs' building was not discovered until one hour to one and one
half hours after the plaintiff Ward Collins locked and left the
building—is not fatal to the plaintiffs' case, but is properly to
be considered by the jury on the question of proximate cause.
*Hardy v. Lumber Co., supra.*

[5] Common experience has established that a large conflagra-
tion in an open field offers an inherent and serious hazard of
fire to adjoining areas if not properly supervised. Further, it
is not improbable, unnatural, unreasonable, or unforeseeable
that fire is a consequence of a serious fire hazard. And it would
not amount to mere conjecture on the part of the jury to reach
such a conclusion on the evidence in this case.

The present case is clearly distinguishable from *Maharias
v. Storage Company,* 257 N.C. 767, 127 S.E. 2d 548 (1962) and

*Phelps v. Winston-Salem,* 272 N.C. 24, 157 S.E. 2d 719 (1967). In both of those cases the actual cause of the fires was unknown and plaintiff's evidence merely showed conduct on the part of the defendants which created merely a risk of a fire. For a discussion of these two cases see Byrd, Actual Causation In North Carolina Tort Law, 50 N.C.L. Rev. 261, 280 (1972). Likewise, the instant case is clearly distinguishable from *Mills, Inc. v. Foundry, Inc.,* 8 N.C. App. 521, 174 S.E. 2d 706 (1970), where there was no evidence that the defendant had started any type of fire or that its smokestack emitted any sparks at the time on the day plaintiff's property was damaged by fire.

In the instant case we think the evidence offered by the plaintiffs, when considered in the light most favorable to the plaintiffs, presented a question for the jury.

New trial.

Judges MORRIS and PARKER concur.