TYSON, Judge.
 

 *231
 
 Cheryl Christine Poage appeals the trial court's order granting summary judgment to Ira and Gail Cox ("the Coxes") and Schoenen Pool and Spa, LLC, ("Schoenen"). We affirm in part, reverse in part, and remand.
 

 *539
 
 I.
 
 Background
 

 The Coxes owned a mountain cabin ("the Cabin") they rented to vacationers. In July 2009, they installed a hot tub and an adjacent waterfall on their property. The Coxes had hired Schoenen to maintain, clean, and perform routine service on the hot tub and waterfall.
 

 Cheryl Poage reserved the Cabin on the Airbnb.com website. Cheryl Poage; her husband, Robert Poage; and Robert's two adult sons, Eric and Jason Poage; stayed at the Cabin from 24 August to 27 August 2015. During their visit, Cheryl and Robert Poage spent time in and around the hot tub and waterfall. On 29 August 2015, shortly after their visit to the Cabin, Cheryl Poage began experiencing weakness and fever. Robert Poage began experiencing fever, weakness, chills, and headache. Cheryl and Robert Poage ("the Poages") were allegedly diagnosed with
 
 Legionella
 
 pneumonia, more commonly known as Legionnaires' disease, and both allegedly required hospitalization.
 

 On 10 August 2016, the Poages filed a complaint alleging they had contracted Legionnaires' disease after coming into contact with
 
 *232
 

 Legionella
 
 bacteria in the Coxes hot tub and waterfall. The Poages asserted claims for negligence against the Coxes and Schoenen (collectively "Defendants"), and breach of contract against the Coxes. The Poages alleged, among other things:
 

 15. Defendants Cox owed a duty to their rental customers, including plaintiffs, to exercise reasonable care in the operation and maintenance of the rental unit and to keep the facility in a reasonably safe condition.
 

 16. Defendants Cox further owed a duty to their rental customers, including plaintiffs, to warn of hidden perils or unsafe conditions known by defendants or discoverable by reasonable inspection.
 

 ...
 

 24. It was the duty of Defendant Schoenen [to properly] maintain the said water feature in a reasonably safe manner so as not to subject guests and visitors to the premises, including plaintiffs, to unreasonable risks of harm.
 

 ...
 

 27. Plaintiffs contracted with Defendants Cox for the rental of defendants' property for occupancy by plaintiffs.
 

 28. An implied term of the rental contract was that the rental property would be suitable and safe for normal occupancy, and that plaintiffs would have the quiet enjoyment of same.
 

 29. Defendants Cox breached the contract by providing plaintiffs with a facility that included an unreasonably dangerous peril, namely the contaminated water feature described herein.
 

 30. As a proximate result of said defendants' breach of their contract with plaintiffs, plaintiffs suffered the injuries and losses set forth above.
 

 Robert Poage died on 16 December 2016, purportedly for reasons unrelated to Legionnaires' disease, and Plaintiff moved to substitute herself for him as executrix of his estate in the lawsuit. On 14 December 2017, the trial court entered a scheduling and discovery consent order, which required the completion of all discovery by 13 July 2018. The Coxes and Schoenen filed motions for summary judgment pursuant to
 
 *233
 
 North Carolina Rule of Civil Procedure 56 in April 2018. The parties subsequently submitted briefs, exhibits and deposition transcripts.
 

 A hearing was conducted on Defendants' motions on 11 June 2018 and the trial court issued an order granting Defendants' summary judgment.
 

 The trial court's summary judgment order stated, in relevant part:
 

 2. During the hearing on Jun 11, 2018, counsel for both Defendants made oral motions to strike the statements or affidavits of Carl Fliermans and Jonathan Kornreich. Defendants contend that the statements were not timely served, did not contain necessary attestations, were not sworn to, or were otherwise procedurally improper and inadmissible and are thus not properly considered as evidence with regard to the Motions. The Court in its discretion denies these motions to strike to the extent they are based on claimed procedural irregularities and determines that, for purposes of
 
 *540
 
 its consideration of the Motions, it will consider the statements made by Dr. Fliermans and Mr. Kornreich. Whether the testimony or statements within the documents are admissible and properly considered by the Court, or sufficient in and of themselves, when combined with other evidence brought forward by Plaintiffs, to permit Plaintiffs to avoid summary judgment, is an entirely different and is matter dealt with hereinbelow.
 

 3. Notwithstanding the Court's denial of the oral motions to strike, and based on the Court's review of the Motions, its review of the Court file, including the statements brought forward by Plaintiffs, and its consideration of the arguments of counsel for the parties, the Court concludes that Defendants' motions for summary judgment should be granted and Plaintiffs' claims dismissed.
 

 ...
 

 5. It is undisputed as a factual matter that the water in the water treatment never tested positive for the presence of legionella bacteria, though the parties disagree as to the cause of this fact.
 

 ...
 

 *234
 
 8. The parties all agree that legionella bacteria is ubiquitous - it exists throughout nature in greater or lesser degrees. Notwithstanding this fact, Plaintiffs have come forward with no objective evidence that the water feature was contaminated with legionella bacteria at the time Plaintiffs stayed at the Coxes' home.
 

 9. Following several years of discovery pursuant to a discovery scheduling order entered in the case, but before the deadline for Defendants to designate their expert witnesses. Defendants filed the Motions, pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, seeking entry of summary judgment in their favor and dismissing Plaintiffs' action for a host of reasons. Defendants contend that Plaintiffs have failed to come forward with sufficient admissible evidence to prove either that Defendants breached a legal duty to Plaintiffs or (in the case of the Coxes) breached a contract between the Coxes and Plaintiffs. Defendants further contend that Plaintiffs have failed to come forward with sufficient admissible evidence to prove that, even assuming a breach of a duty or contract, that the alleged breach proximately resulted in Plaintiffs' illness. Defendants also contends [
 
 sic
 
 ] that Plaintiffs assumed the risk of illness and were contributorily negligent by virtue of the fact that they were aware of irregularities in the water and they were warned not to use the spa until further notice but used it nonetheless.
 

 ...
 

 13. Having carefully considered the record in this matter, and having also considered the arguments of counsel for the parties, the Court concludes that Defendants have made a sufficient initial showing to shift the burden to Plaintiffs to come forward with evidence to substantiate their claims. Further, while there may be in the Court's opinion sufficient evidence of negligence or breach of contract on Defendants' part, Plaintiffs have nonetheless failed to come forward with sufficient admissible evidence to support one or more of their required factual showings to proceed to trial: (a) that the water feature was contaminated with legionella bacteria at the time Plaintiffs stayed at the Coxes' house; or (b) that Plaintiffs contracted legionella pneumonia from being in the vicinity of the water feature.
 

 *235
 
 14. With regard to both factual issues, Plaintiffs have relied on speculation and conjecture, as opposed to coming forward with admissible evidence to support their contentions in two critical regards, Michael L. Silverman's statement, dated June 6, 2018, states that:
 

 Based upon my training, experience and expertise and based upon my review of the records listed above, it is my medical opinion more likely than not that Mr. and Mrs. Poage developed Legionella pneumonia as a result of exposure to the hot tub and waterfall while staying at this rental property from August 24 to August 27, 2015 (Silverman Aff. ¶ 8.)
 

 15. Putting aside the "more likely that not" standard utilized by Dr. Silverman, rather than "to a reasonable degree of medical
 
 *541
 
 certainty", the basis for this opinion is set forth in an earlier paragraph as follows:
 

 The simple fact that both Mr. and Mrs. Poage developed Legionella pneumonia at the same time in early September 2015, supports the Airbnb home they stayed as the source as [
 
 sic
 
 ] the incubation of two to ten days is consistent with this fact. (Silverman Aff., ¶4, p. 5)
 

 16. Dr. Silverman's statement is the only one put forward by Plaintiffs that purports to provide the vital and necessary proximate cause link between Defendants' alleged negligence and Plaintiffs' claims for illness and injuries. The Court believes that Dr. Silverman's statement does not provide a proper basis for an opinion satisfying the proof element of proximate causation. The above quoted language stands for nothing more than that the timeline in this case is "consistent with" the Poages having contracted legionella bacteria while at the Coxes' home. The Court concludes that such a statement does not satisfy Plaintiffs' obligation to come forward with admissible evidence of proximate causation.
 

 17. Similarly, the "statement" by Jonathan Kornreich, another witness proferred by Plaintiffs as a purported
 
 *236
 
 expert opinion witness, provides, in relevant part (at least as to the proximate cuase [
 
 sic
 
 ] issue), that:
 

 In this instance, it is clearly more likely than not that the chain of failures and disregard of standard safety practices, both by Schoenen and Cox, observed at this property created a situation in which dangerous bacteria were permitted to propogate [
 
 sic
 
 ] and infect an innocent member of the public. (Kornreich statement, p. 4)
 

 18. While it is not at all clear to the Court, to the extent that "an innocent member of the public" is intended by Mr. Kornreich to refer to Mr. and/or Mrs. Poage, Mr[.] Kornreich's statement provides no information from which the Court can conclude that his opinion, at least as it relates to the issue of proximate causation, would be admissible before a jury. In fact, based on Mr. Kornreich's resume attached to his statement, the Court can amply conclude that he is not competent to render an opinion in this case with regard to medical causation.
 

 19. In other words, having no objective evidence that legionella bacteria was present in the Coxes' water feature, or that the water in the water feature was the source of Plaintiffs' illness, as opposed to any number of other possible alternative sources, legionella bacteria being admitted by Plaintiffs to be ubiquitous, Plaintiffs extrapolate from (a) the fact that the Poages were allegedly later diagnosed with legionella pneumonia ; into a factually unsupported conclusion that (b) the water feature must have been contaminated with legionella bacteria and must have been the source of Plaintiffs' illness. The Court does not believe the law of North Carolina permits such a "leap of faith". Plaintiffs' factual assertions are tantamount to the application of the doctrine of
 
 res ipsa loquitur
 
 which has, to the Court's knowledge, never been applied to a factual situation such as this. [footnote omitted].
 

 20. Therefore, based on the record before the Court, the Court concludes that Plaintiffs have failed to come forward with sufficient admissible evidence to substantiate a claim that Plaintiffs were injured as a proximate
 
 *237
 
 result of Defendants' wrongful conduct. As a result of this fundamental evidentiary failure of proof, the Court concludes that Motions should be and are hereby granted and Summary Judgment is hereby entered in Defendants' favor and against Plaintiffs.
 

 Cheryl Poage, individually and as executrix of the estate of Robert Poage ("Plaintiffs"), filed timely notice of appeal to this Court.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).
 

 III.
 
 Standard of Review
 

 "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law."
 

 *542
 

 Summey v. Barker
 
 ,
 
 357 N.C. 492
 
 , 496,
 
 586 S.E.2d 247
 
 , 249 (2003) (citation and internal quotation marks omitted);
 
 see
 
 N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017).
 

 A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.
 

 Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a
 
 prima facie
 
 case at trial.
 

 Draughon v. Harnett Cty. Bd. of Educ.
 
 ,
 
 158 N.C. App. 208
 
 , 212,
 
 580 S.E.2d 732
 
 , 735 (2003) (Tyson, J.) (citations and quotation marks omitted),
 
 aff'd per curiam
 
 ,
 
 358 N.C. 131
 
 ,
 
 591 S.E.2d 521
 
 (2004). "Evidence presented by the parties is viewed in the light most favorable to the non-movant."
 
 Summey
 
 ,
 
 357 N.C. at 496
 
 ,
 
 586 S.E.2d at 249
 
 .
 

 Rule of Civil Procedure 56(e) provides in relevant part: "Supporting and opposing affidavits [submitted in connection with summary
 
 *238
 
 judgment] shall be made on personal knowledge,
 
 shall set forth such facts as would be admissible in evidence
 
 , and shall show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2017) (emphasis supplied).
 

 " 'Ordinarily, whether a witness qualifies as an expert is exclusively within the discretion of the trial judge.' "
 
 FormyDuval v. Bunn
 
 ,
 
 138 N.C. App. 381
 
 , 385,
 
 530 S.E.2d 96
 
 , 99 (2000) (brackets omitted) (quoting
 
 State v. Underwood
 
 ,
 
 134 N.C. App. 533
 
 , 541,
 
 518 S.E.2d 231
 
 , 238 (1999) ). "The determination of the admissibility of expert testimony is within the sound discretion of the trial judge and will not be disturbed on appeal absent abuse of discretion."
 
 Braswell v. Braswell
 
 ,
 
 330 N.C. 363
 
 , 377,
 
 410 S.E.2d 897
 
 , 905 (1991). "[T]o survive defendants' motion for summary judgment ... plaintiff must allege a
 
 prima facie
 
 case of negligence-defendants owed plaintiff a duty of care, defendants' conduct breached that duty, the breach was the actual and proximate cause of plaintiff's injury, and damages resulted from the injury."
 
 Lamm v. Bissette Realty
 
 ,
 
 327 N.C. 412
 
 , 416,
 
 395 S.E.2d 112
 
 , 115 (1990) (citation omitted).
 

 "Summary judgment is seldom appropriate in a negligence action."
 
 Hamby v. Thurman Timber Co., LLC
 
 , --- N.C. App. ----, ----,
 
 818 S.E.2d 318
 
 , 323 (2018) (citation omitted). "Our standard of review of an appeal from summary judgment is de novo[.]"
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 IV.
 
 Discovery Period
 

 Plaintiffs argue the trial court prejudicially erred by considering and granting Defendants' motions for summary judgment before the discovery period had ended. We disagree.
 

 Ordinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so. However, [a] trial court is not barred in every case from granting summary judgment before discovery is completed.
 

 Patrick v. Wake Cty. Dep't of Human Servs.
 
 ,
 
 188 N.C. App. 592
 
 , 597,
 
 655 S.E.2d 920
 
 , 924 (2008) (citations and quotation marks omitted) (alteration in original). "A trial court's granting summary judgment before discovery is complete may not be reversible error if the party opposing summary judgment is not prejudiced."
 
 Hamby
 

 v. Profile Prod., LLC
 
 ,
 
 197 N.C. App. 99
 
 , 113,
 
 676 S.E.2d 594
 
 , 603 (2009) (citations omitted).
 

 *239
 
 Plaintiffs were not awaiting any responses to interrogatories or the production of any further evidence at the time the trial court heard the motions. Plaintiffs had not requested
 
 *543
 
 any additional depositions. Plaintiffs never argued before the trial court that additional discovery was needed to challenge or delay ruling upon Defendants' summary judgment motions.
 

 Plaintiffs have failed to demonstrate they were prejudiced by the trial court considering and ruling upon Defendants' summary judgment motions before the discovery period had ended.
 
 See
 
 id.
 

 Plaintiffs' argument is without merit and overruled.
 

 V.
 
 Plaintiffs' Experts
 

 Plaintiffs submitted expert-prepared materials in response to Defendants motions for summary judgment. One was the affidavit of Dr. Carl Fliermans, Ph.D, and another was a report authored by Jonathan Kornreich. Defendants argue Dr. Fliermans's affidavit and Kornreich's report should not be considered in determining whether summary judgment is proper because they do not constitute sworn testimony.
 

 Defendants made oral motions to strike Dr. Fliermans's affidavit and Kornreich's report at the trial court's hearing on their motions for summary judgment in part, on the basis these expert materials were not sworn testimony. The trial court's order granting summary judgment to Defendants states, in relevant part: "The Court in its discretion denies these motions to strike to the extent they are based on claimed procedural irregularities[.]" Defendants assert this Court should not consider Dr. Fliermans's affidavit and Kornreich's report because of procedural irregularities, but do not reference or cross-appeal the trial court's denial of their motions to strike.
 

 "We review the trial court's ruling on [a] motion to strike [an] affidavit for abuse of discretion."
 
 Blair Concrete Servs., Inc. v. Van-Allen Steel Co.
 
 ,
 
 152 N.C. App. 215
 
 , 219,
 
 566 S.E.2d 766
 
 , 768 (2002). Defendants do not argue the trial court abused its discretion or otherwise erred by denying their motions to strike. Based upon Defendants failure to cross-appeal from or argue the trial court abused its discretion by denying their motions to strike, we find their purported arguments that this Court should not consider Dr. Fliermans's affidavit or Kornreich's report are waived and subject to dismissal.
 
 See
 

 High Rock Lake Partners, LLC v. N. Carolina Dep't of Transp.
 
 ,
 
 234 N.C. App. 336
 
 , 341,
 
 760 S.E.2d 750
 
 , 754 (2014) (finding the appellants argument that the trial court erred by denying their motion for attorney's fees was waived when appellants failed to argue the trial court abused its discretion).
 

 *240
 
 VI.
 
 Negligence
 

 Plaintiffs next argues genuine issues of material fact on their negligence claim precludes summary judgment.
 

 "To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach."
 
 Petty v. Cranston Print Works
 
 ,
 
 243 N.C. 292
 
 , 298,
 
 90 S.E.2d 717
 
 , 721 (1956) (citation omitted). Our Supreme Court has held that negligence is the "failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care."
 
 Hart v. Ivey
 
 ,
 
 332 N.C. 299
 
 , 305,
 
 420 S.E.2d 174
 
 , 177-78 (1992) (citation omitted).
 

 A.
 
 Duty
 

 With regards to the Coxes, Plaintiffs have forecasted evidence to establish a genuine issue of material fact with respect to the element of duty of care.
 

 Our Supreme Court has held that landowners owe a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors."
 
 Nelson v. Freeland
 
 ,
 
 349 N.C. 615
 
 , 632,
 
 507 S.E.2d 882
 
 , 892 (1998). "Whether a landowner's care is reasonable is judged against the conduct of a reasonably prudent person under the circumstances."
 
 Kelly v. Regency Ctrs. Corp.
 
 ,
 
 203 N.C. App. 339
 
 , 343,
 
 691 S.E.2d 92
 
 , 95 (2010). The Coxes' counsel conceded at the summary judgment hearing before the trial court that the Coxes, and their cabin, were subject to the Vacation Rental Act, N.C. Gen. Stat. §§ 42A-1 to 42A-40. Pursuant to the Vacation Rental Act, "A
 

 *544
 
 landlord of a residential property used for a vacation rental shall[,]" among other things:
 

 (2) Make all repairs and do whatever is reasonably necessary to
 
 put and keep the property in a fit and habitable condition
 
 .
 

 (3) Keep all common areas of the property in safe condition.
 

 (4) Maintain in good and safe working order and reasonably and promptly repair all electrical, plumbing, sanitary, heating, ventilating, and other facilities and major
 
 *241
 
 appliances supplied by him or her upon written notification from the tenant that repairs are needed.
 

 N.C. Gen. Stat. § 42A-31 (2017) (emphasis supplied).
 

 The Vacation Rental Act further provides that "[t]hese duties shall not be waived[.]"
 

 Id.
 

 Plaintiffs' forecast of evidence could support a conclusion that the Coxes leased their cabin as a vacation rental to the Poages; that the hot tub and waterfall were not safe for tenant occupancy; and that the Coxes breached their statutory duty to "do whatever is reasonably necessary to put and keep the property in a fit and habitable condition."
 
 Id
 
 .
 

 "A violation of the duty to maintain the premises in a fit and habitable condition is evidence of negligence."
 
 Brooks v. Francis
 
 ,
 
 57 N.C. App. 556
 
 , 559,
 
 291 S.E.2d 889
 
 , 891 (1982).
 

 With regard to Schoenen owing the Poages a duty of care:
 

 Privity of contract is not required in order to recover against a person who negligently performs services for another and thus injures a third party.
 
 There is a duty to protect third parties where a reasonable person would recognize that if he does not use ordinary care and skill in his own conduct, he will cause damages or injury to the person or property of the other.
 

 Westover Products, Inc. v. Gateway Roofing, Inc.
 
 ,
 
 94 N.C. App. 63
 
 , 67,
 
 380 S.E.2d 369
 
 , 372 (1989) (emphasis supplied).
 

 Here, it is undisputed the Poages were invitees and renters of the Coxes who stayed at the cabin from the 25 to 27 August 2015.
 

 The Coxes argue they delegated any duty they may have owed the Poages to Schoenen, by hiring them "as the experts to maintain" the hot tub and waterfall.
 

 Amy Schoenen Avery ("Avery"), the owner of Schoenen, answered in her response to Plaintiffs' interrogatories that "she was never advised the Cox property was leased to tenants." Avery testified in her deposition that if she had known the cabin was being rented, Schoenen would have utilized the maintenance procedures that are suitable for a commercial hot tub. Gail Cox testified that from when she initially hired Schoenen to service the hot tub and waterfall, she let Avery know that they were renting the cabin.
 

 *242
 
 Presuming
 
 arguendo
 
 , the Coxes could delegate their common law duty of reasonable care and their statutory duties under the Vacation Rental Act to Schoenen, genuine issues of material fact exist regarding whether the Coxes delegated their duties to Schoenen. The difference between Gail Cox and Avery's testimony with regards to whether Avery knew the Cabin was being rented to third-parties creates a genuine issue of material fact, which precludes summary judgment on this issue.
 

 B.
 
 Breach
 

 Plaintiffs argue sufficient evidence creates a question of material fact of whether Defendants breached their duty of care. We agree.
 

 The Division of Public Health of the North Carolina Department of Health and Human Services ("DHHS") conducted an investigation of the Coxes' Cabin, including the hot tub and waterfall, following notification that the Poages were hospitalized for Legionnaires' disease.
 

 Following this investigation by DHHS, Drs. Jessica Rinsky and Zachary Moore prepared a final report dated 24 November 2015 ("the Rinsky Report").
 

 The Rinsky Report stated, in relevant part:
 

 Division of Public Health and Burke County Environmental Health staff identified hot tub and waterfall maintenance practices that may have provided conditions conducive for
 
 Legionella
 
 growth, including a lack of continual disinfection of the spa;
 

 *545
 
 periods where the waterfall system did not continuously flow; water stagnation between rentals; and, a lack of continual disinfection of the waterfall system.
 

 ....
 

 [E]nvironmental health staff noted hot tub and waterfall maintenance practices that did not meet recommendations for
 
 Legionella
 
 control.
 

 In addition to the Rinsky Report, Plaintiffs submitted the report of Jonathan Kornreich ("Kornreich Report"). Jonathan Kornreich previously owned a pool construction and maintenance company. Kornreich's report compared the maintenance practices performed at the Cabin to recommended industry standards and best practices. Kornreich's report states, in relevant part:
 

 *243
 
 a. Equipment: The [hot tub] relied on an alternative sanitization device [Nature2 Sticks] which is not meant to be a primary and sole system. There was no provision made to create a sanitizer residual. This could have been accomplished easily and with very little cost through use of a chlorine or bromine floater, although the owner noted that renters were found to have removed the floater. In that case an inline feeder should have been installed. Had an inline feeder been installed, a sanitizer residual could have been automatically maintained.
 
 A lack of residual sanitizer combined with warm spa water created conditions which were ideal for the propagation of bacteria, including legionella.
 

 b. Maintenance: Maintenance was provided by a professional swimming pool service company. According to their records, the chemical parameters were out of range on numerous occasions between June 2 and September 1, the dates for which we have records. Of the 14 service calls documented during that time, at no time were the water parameters within the "ideal range" as determined by the ANSI standard or within the range identified by the Nature2 manufacturer as correct operating parameters for their product. In one instance (July 8), the pH was at the maximum limit and the alkalinity was near the minimum limit. On that day a calculation of the Lanelier Saturation Index (as required when water is outside the ideal range) would have almost certainly found the water to be out of balance, although a failure to keep accurate records makes a retrospective calculation impossible.
 

 When water chemistry parameters are outside the ideal range, the efficacy of sanitizers is diminished and pathogens are able to live and reproduce unhindered. Because of the lack of residual sanitizer, bacteria such as
 
 Legionella
 
 can become established in the water and create a biofilm. Biofilm bacteria may take a disinfectant level 100 times higher in concentration as well as vigorous scrubbing to remove.
 

 ...
 

 Further, there is no record of the waterfall having been drained, cleaned, sanitized or scrubbed.
 
 It is again more
 

 *244
 

 likely than not that a colony of Legionella would have been able to propagate in the waterfall
 
 and infected anyone nearby through aerosolized droplets containing the bacteria.
 

 ...
 

 In this instance, it is clearly more likely than not that the chain of failures and disregard of standard safety practices, both by Schoenen and Cox, observed at this property created a situation in which dangerous bacteria were permitted to propagate
 
 [.] [Emphasis supplied].
 

 In addition to Kornreich's report, Plaintiffs also submitted the affidavit of their expert witness, Dr. Carl Fliermans, who possesses a Ph.D. in microbiology and has conducted ecological research on
 
 Legionella
 
 bacteria since 1977. Dr. Fliermans stated in his affidavit, in relevant part, that it was "more likely than not":
 

 The maintenance of this hot tub and water feature were not conducted in a proper way to prevent the growth, dissemination and infectivity of the
 
 Legionella
 
 bacterium to susceptible individuals2 [
 
 sic
 
 ].
 

 ...
 

 During the month of August, maintenance was performed on the spa and water feature on a weekly basis. Generally, two (2) ounces of granular chlorine were scattered
 
 *546
 
 into the spa pool area which contained 900 gallons of water. Such an addition is inadequate to affect the
 
 Legionella
 
 bacterium.
 
 Legionella
 
 is associated with biofilms in nature and those biofilms protect the bacterium from the action of the biocide. Doses of biocide need to exceed 10-30 ppm for shock chlorination to be effective.
 

 ...
 

 The lack of a chlorine residual as specified by CDC, is to be between 2-4 ppm for a maintenance level of chlorine to provide a safe operation of a hot tub.
 
 This level was never achieved in this facility with 2 ounces of chlorine granules. The absence of chlorine in a hot tub makes the hot tub with its warm waters and organic loading, a breeding ground for Legionella.
 
 [Emphasis supplied]
 

 *245
 
 With regard to the waterfall, Avery testified that there were periods where the waterfall system was not continuously circulating. According to Avery, the waterfall would occasionally run out of water from evaporation and remain stagnant for extended periods of time. Avery further testified "[M]y industry doesn't have standards for waterfalls. They're ornamental. They're not for swimming or bathing.
 
 I didn't test the water in the waterfall
 
 ." (emphasis supplied). Avery agreed with the Rinsky Report's results that stagnant water in the waterfall may have been conducive to the growth of
 
 Legionella
 
 bacteria.
 

 Viewed in the light most favorable to Plaintiffs, Plaintiffs have presented sufficient evidence showing genuine issues of material fact exist with regard to Defendants breaching their duty of care.
 

 C.
 
 Proximate Cause
 

 Plaintiffs argue they have presented sufficient evidence to create a genuine issue of material fact of whether Defendants' negligence proximately caused them to contract Legionnaires' disease to overcome Defendants' motions for summary judgment. We agree.
 

 "[T]he test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant."
 
 Shelton v. Steelcase, Inc.,
 

 197 N.C. App. 404
 
 , 431-32,
 
 677 S.E.2d 485
 
 , 504 (2009) (citation omitted).
 

 [I]t is
 
 only in exceptional cases
 
 , in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law.
 
 [P]roximate cause is ordinarily a question of fact for the jury
 
 , to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.
 

 Williams v. Carolina Power & Light Co.
 
 ,
 
 296 N.C. 400
 
 , 403,
 
 250 S.E.2d 255
 
 , 258 (1979) (emphasis supplied) (citation and quotation marks omitted).
 

 Defendants argue Plaintiffs are unable to establish any genuine issue of material fact to show causation, because tests of the hot tub and waterfall were negative for
 
 Legionella
 
 bacteria. Contrary to Defendants' arguments, it is well-settled that a plaintiff need not establish direct evidence of proximate causation. "Direct evidence of negligence is not required; it may be inferred from the attendant facts and circumstances."
 
 Greene v. Nichols
 
 ,
 
 274 N.C. 18
 
 , 22,
 
 161 S.E.2d 521
 
 , 524 (1968).
 

 *246
 
 "Actual causation may be proved by circumstantial evidence[.]"
 
 Collins v. Caldwell Furniture Co.,
 

 16 N.C. App. 690
 
 , 694,
 
 193 S.E.2d 284
 
 , 286 (1972) (citation omitted).
 

 Ten samples were collected from the hot tub and waterfall on 30 September 2015 by the Burke County Health Department staff, over a month after the Poages visited the Cabin. These ten samples returned negative test results for
 
 Legionella
 
 bacteria. Following Plaintiffs' stay at the cabin, but before the Coxes were notified of Plaintiffs' diagnoses with Legionnaires' disease, Schoenen drained and cleaned the hot tub. Dr. Rinsky of DHHS testified in her deposition that Schoenen's draining and cleaning on 1 September 2015, irrespective of any chemical sanitation of the hot tub, would have affected the ability of a test to return positive results for
 
 Legionella
 
 .
 

 After DHHS and the Burke County Health Department were notified of Plaintiffs' contracting Legionnaires' disease, Stacie
 
 *547
 
 Rhea of DHHS instructed the Coxes on 23 September 2015 to drain and disinfect the hot tub and waterfall and hyperchlorinate the hot tub. This sanitization of the hot tub and waterfall was conducted by Schoenen on an undetermined date before test samples were taken by the Burke County Health Department on 30 September 2015.
 

 Dr. Zackary Moore, a medical doctor employed by DHHS, stated in his deposition that "The [Poages] were interviewed to look -- to inquire about other sources of air exposure or water exposure, and none were identified aside from the hot tub and waterfall at the rental house." He further stated that he "inquired about other sources of aerosolized water beyond the rental house, but none were identified so no other sources were considered further." "[T]he onset of illness in both cases meant that their time at the rental home would have been during ... the likely exposure period."
 

 Plaintiff's expert Dr. Fliermans testified in his affidavit, in relevant part:
 

 Schoenen Pool & Spa, LLC serviced the facility in question and has been shown by [the] John Kornreich Affidavit[ ] not to adequately treat the hot tub and water feature to prevent the
 
 Legionella
 
 bacterium from growing.
 

 ...
 

 On August 25, the Schoenen Pool & Spa, LLC company according to the sparse records treated the hot tub with 4 ounces, of granular chlorine. No chlorine measurements
 
 *247
 
 were made in the field and none were recorded in the maintenance records. If this had been a shock chlorine treatment, then the Poage party would not have been able to enter the hot tub because of safety considerations. Thus, it was not a shock chlorination treatment that requires chlorine levels in excess of 20 ppm for an extended period of time. It is my opinion that the addition of 4 ounces of granular chlorines was effective in disturbing the biofilm in which the
 
 Legionella
 
 resided and may have exacerbated conditions to which the Poage's party were exposed.
 
 If appropriate water samples had been taken and appropriately tested at that time, it is my opinion Legionella would have been detected to be present in the samples.
 

 ...
 

 Based upon my training and research on the ecology of
 
 Legionella
 
 it is my professional opinion that more likely than not the opinions rendered above are true and correct.
 

 A genuine issue of material fact exists as to whether
 
 Legionella
 
 bacteria was present in the Coxes' hot tub or waterfall, and whether bacteria from the hot tub or waterfall caused Plaintiffs to contract Legionnaires' disease. This is based, in part, upon: (1) Dr. Fliermans's opinion
 
 Legionella
 
 bacteria would have been detected in the hot tub when Plaintiffs used it; (2) the proximity in time to Plaintiffs' use of the hot tub and their diagnoses with Legionnaires' disease ; (3) both Plaintiffs contracting Legionnaires' disease within the exposure period; and (4) the expert opinions of Dr. Fliermans and Kornreich that the maintenance standards utilized by Schoenen were inadequate to have kept
 
 Legionella
 
 from contaminating the hot tub and waterfall.
 
 See
 

 Williams
 
 ,
 
 296 N.C. at 403
 
 ,
 
 250 S.E.2d at 258
 
 .
 

 D.
 
 Injury
 

 Plaintiffs argue they have presented sufficient evidence to establish genuine issues of material fact with regard to the Poages' injuries. We agree.
 

 Schoenen argues that Plaintiffs have failed to produce evidence to show Cheryl Poage was diagnosed with Legionnaires' disease. Neither Defendant challenges on appeal that Robert Poage was diagnosed with Legionnaires' disease.
 

 Viewing the evidence in the light most favorable to Plaintiffs, sufficient evidence forecasts that Cheryl Poage was diagnosed with
 
 *248
 
 Legionnaires' disease. Both Dr. Zachary Moore, and Dr. Michael Silverman, an infectious disease expert, testified that Cheryl Poage was diagnosed with Legionnaires' disease by means of a urine antigen test ordered by Novant Health Forsyth Medical Center, where she was hospitalized.
 

 Plaintiffs met their burden to produce evidence showing a genuine issue of material fact exists with regard to the element of
 
 *548
 
 injury. Viewed in the light most favorable to Plaintiffs, their evidence tends to show the Poages were hospitalized for Legionnaires' disease, they incurred medical expenses, and they experienced pain and suffering as a result of the disease.
 

 Plaintiffs' evidence establishes a genuine issue of material fact exists with respect to the Poages' injuries resulting from Legionnaires' disease.
 

 VII.
 
 Breach of Contract
 

 In addition to negligence, Plaintiffs asserted a claim for breach of contract against the Coxes. The motion for summary judgment the Coxes filed with the trial court challenged all of Plaintiffs' claims, including breach of contract. The trial court's summary judgment order does not specifically address Plaintiffs' breach of contract claim, but the trial court granted summary judgment to Defendants on all of Plaintiffs' claims.
 

 Plaintiffs do not specifically address their breach of contract claim in their appellate brief. The Coxes argue in their appellee brief that Plaintiffs have failed to forecast sufficient evidence of breach of contract. In their reply brief, Plaintiffs do not present an argument with respect to breach of contract, but assert the issue is "not ripe and should be remanded to the trial court for consideration in the first instance."
 

 Although the trial court's summary judgment order does not specifically mention the breach of contract claim, the Coxes' motion for summary judgment requested summary judgment on all of Plaintiffs' claims, and the Coxes argued before the trial court that summary judgment on the breach of contract claim should be granted. The trial court's summary judgment order granted summary judgment to Defendants on all of Plaintiffs' claims. Based upon this Court's
 
 de novo
 
 standard of review of orders granting summary judgment, Plaintiffs' contention that the Coxes' arguments concerning breach of contract are not ripe is without merit.
 
 See
 

 In re Will of Jones
 
 ,
 
 362 N.C. at 573
 
 ,
 
 669 S.E.2d at 576
 
 .
 

 Plaintiffs have failed to preserve or argue why the trial court's summary judgment order should be reversed with respect to their breach of contract claim. "Issues not presented in a party's brief, or in support
 
 *249
 
 of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6). Plaintiffs have abandoned any arguments they may have asserted with respect to their breach of contract claim.
 
 See
 

 id
 
 . The trial court's summary judgment order is affirmed to the extent the trial court granted summary judgment to the Coxes on Plaintiffs' breach of contract claim.
 

 VIII.
 
 Conclusion
 

 Viewed in the light most favorable to Plaintiffs, Plaintiffs' forecast of evidence establishes genuine issues of material fact exist on all elements of their negligence claims against Defendants. Plaintiffs abandoned any argument that the trial court's order should be reversed to the extent the trial court granted summary judgment to the Coxes on Plaintiffs' breach of contract claim. The trial court's summary judgment order is affirmed with respect to Plaintiffs' breach of contract claim, reversed with respect to Plaintiffs' negligence claims against both Defendants, and is remanded for trial on Plaintiffs' negligence claims.
 
 It is so ordered
 
 .
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges DIETZ and BERGER concur.