WILLIAM G. SNOW AND GROVEWOOD, INC. v. DUKE POWER COMPANY

No. 7817SC67

(Filed 2 January 1979)

**1. Fires § 3; Electricity § 7.1— fire allegedly caused by power line —insufficient evidence of causation**

Plaintiffs' evidence was insufficient to support a jury finding that a fire at plaintiffs' barn was caused by defendant power company's line which ran to the barn where it tended to show only that defendant removed the meter from a meter box on the barn several weeks before the fire, the fire started above the meter box, and the power line leading to the barn had electricity flowing through it the day after the fire, since plaintiffs' evidence failed to raise more than a speculation that the fire was electrical in origin and to negate other possible causes of the fire.

**2. Negligence § 31— res ipsa loquitur —inapplicability to show causation**

The doctrine of *res ipsa loquitur* permits only an inference of negligence and does not establish causation; therefore, it is not applicable when the cause is unknown or more than one inference can be drawn as to causation.

**3. Fires § 3; Electricity § 7.1; Negligence § 31— fire damage —res ipsa loquitur inapplicable**

The doctrine of *res ipsa loquitur* was inapplicable in an action against a power company to recover for fire damages to plaintiffs' barn allegedly caused by an electric power line leading to the barn where the cause of the fire was not established and defendant did not have exclusive control over the electrical equipment.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 17 October 1977 in Superior Court, SURRY County. Heard in the Court of Appeals at Winston-Salem, on 14 November 1978.

On 24 June 1976, plaintiffs filed a complaint alleging that the defendant was negligent in that the electrical current passing from the defendant's power line to plaintiff's barn was of such strength as to bypass all fuses and other safety devices, and that the electricity burned through the lines and caused a fire which completely destroyed the barn and farming equipment stored within and nearby the barn.

At trial, plaintiffs' evidence tended to show that the power line ran from a utility pole to the front, or south side, of the barn where it was attached under the eaves. It then ran down to a box, and then further down to the meter box. This wire, the riser

wire, was attached to the barn. Below the meter box was an outlet on the outside of the barn.

Plaintiff Snow, overseer for GroveWood, Inc., testified that he had never used any electricity at the barn or paid for any electrical service to the barn. He had never used or touched the meter and had never touched the wire leading from the meter box to the main power line. He first learned that there was power in the line the morning after the fire when some of the firemen received shocks when they touched the wire. The fire was located near where the service wire attached to the barn near the eaves. There was no fire in the lower part of the barn.

There was no stove or gas stored in the barn, but there was an electric cattle fence running along the north side of the barn. If a weed or object touched the fence, the fence would either burn it down or blow a fuse. The transformer for the electric fence was located under the shed, which was about 300 yards from the barn.

Ed Snow, plaintiff's father, testified that he saw the meter box door open after the defendant removed the meter, and that he closed the door and placed a plastic bag over it. At about 4:30 a.m. on 1 January 1976, he awoke and saw that the barn was on fire. The fire was directly above the meter box and about the size of a "big table."

Defendant's motion to dismiss at the close of plaintiffs' evidence was denied.

Larry Wright, testifying for the defendant, stated that he was an employee of Duke Power Company, and that the meter on plaintiff's barn was removed on 1 December 1975. The meter had been inactive for ninety-nine months. He could not say whether or not any power was used out of that meter.

Part of the meter inspector's job is to inspect the condition of wires, specifically the service drop and the riser wire. He did not know if anyone had inspected the premises after the meter was removed.

He testified that the riser wire—the wire leading up from the meter box which connected at the top of the barn with defendant's power line—belonged to the customer. Wires on types of buildings such as the barn are classified as general ser-

vice, and the riser wires are installed and owned by the customer. Duke Power had maintained these classifications since at least 1965.

David G. Smith, a retired employee of Duke Power, testified that the riser wires on commercial buildings were supplied by the customers and that the defendant had no control over the riser wires. The meter box, however, is owned by the defendant. He never explained to the prior owner that the riser wire belonged to the customer.

Kent Gibson testified that he removed the meter from the meter box on 1 December 1975, and sealed the meter box. The wires connecting the meter were left in the box. There was no electrical current to the meter at that time; the current was cut off by loosening two bolts inside the meter box. The riser wire is connected to the meter box by a test block.

At the close of all the evidence, defendant moved for a directed verdict. The motion was denied. The following issues were submitted to and answered by the jury:

"1. Was the property of the plaintiffs, William G. Snow and Grovewood, Inc., damaged by the negligence of the Defendant, Duke Power Company, as alleged in the Complaint?

ANSWER: Yes.

2. What amount, if any, is the plaintiff, William G. Snow entitled to recover of the defendant, Duke Power Company?

ANSWER: $5,000.00.

3. What amount, if any, is the plaintiff, GroveWood, Inc., entitled to recover of the defendant?

ANSWER: $2,000.00."

The defendant then moved for judgment notwithstanding the verdict and a new trial, which motions were denied.

*Tornow and Lewis by Michael J. Lewis for plaintiff appellees.*

*Folger and Folger by Fred Folger, Jr.; and William I. Ward, Jr. for defendant appellant.*

CLARK, Judge.

Defendant contends that the plaintiffs presented insufficient evidence of causation and of defendant's negligence to submit the issue to the jury.

Ordinarily, there is no direct evidence of the cause of a fire, and therefore, causation must be established by circumstantial evidence. *See, Stone v. Texas Co.*, 180 N.C. 546, 105 S.E. 425 (1920). "The cause of the fire is not required to be shown by direct and positive proof. . . . It may . . . be inferred from circumstances. . . . It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts. . . ." *Simmons v. Lumber Co.*, 174 N.C. 221, 225, 93 S.E. 736, 738 (1917). The evidence must show that the more reasonable probability is that the fire was caused by the defendant, or an instrumentality solely within his control. See, *Collins v. Furniture Co.*, 16 N.C. App. 690, 193 S.E. 2d 284 (1972). *Simmons v. Lumber Co., supra.*

[1] In the case *sub judice*, plaintiffs' evidence, taken in the light most favorable to them, tends to show that the defendant removed the meter from the meter box several weeks before the fire, that the fire started above the meter box, and that the wires leading to the barn had electricity flowing through them the day after the fire.

In *Maharias v. Storage Co.*, 257 N.C. 767, 127 S.E. 2d 548 (1962), the plaintiff presented evidence that rags soaked with furniture polish were found in the room where a fire originated. The fire had spread from defendant's warehouse to plaintiff's building. The court held that the evidence of defendant's negligence was insufficient to reach the jury since the cause of the fire was "mere conjecture, surmise and speculation."

In *Phelps v. Winston-Salem*, 272 N.C. 24, 157 S.E. 2d 719 (1967), a fire started in a public market, near a stove which had cracks in it. There were also combustible materials stored nearby. The court, quoting *Moore v. R.R.*, 173 N.C. 311, 92 S.E. 1 (1917), stated " '[T]here must be more than bare evidence of a possibility, or even a probability, that the fire was so caused.' " 272 N.C. at 30, 157 S.E. 2d at 723. *See, Maguire v. R.R.*, 154 N.C. 384, 70 S.E. 737 (1911). *Compare, Rountree v. Thompson*, 226 N.C. 553, 39 S.E.

2d 523 (1946); *Continental Insurance Co. v. Foard,* 9 N.C. App. 630, 177 S.E. 2d 431 (1970); *Mills, Inc. v. Foundry, Inc.,* 8 N.C. App. 521, 174 S.E. 2d 706, *cert. denied* 277 N.C. 111 (1970); *with, Lawrence v. Power Co.,* 190 N.C. 664, 130 S.E. 735 (1925); *Stone v. Texas Co., supra; Gaston v. Smith,* 22 N.C. App. 242, 206 S.E. 2d 311, *cert. denied* 285 N.C. 658, 207 S.E. 2d 753 (1974); *Collins v. Furniture Co., supra.*

Under the standards set forth in *Maharias, supra,* and *Phelps, supra,* and the other cases cited above, we find that the plaintiffs' evidence fails to raise more than a speculation that the fire was electrical in origin. The plaintiffs' evidence does not negate the other possible causes of the fire.

Nor is the doctrine of *res ipsa loquitur* available to assist the plaintiffs in reaching the jury. *Res ipsa loquitur* is a rule of evidence which establishes a *prima facie* case of negligence. 58 Am. Jur. 2d, Negligence, § 474. In order for the rule to apply, three conditions must be met — "(1) that the accident was of a kind which does not ordinarily occur unless someone was negligent; (2) that the instrumentality or agency which caused the injury was in the exclusive control of the person charged with negligence, and (3) that the injury suffered must not have been due to any voluntary action or contribution on the part of the person injured." 58 Am. Jur. 2d, Negligence, § 480 at 55. *See, Springs v. Doll,* 197 N.C. 240, 148 S.E. 251 (1929).

[2] The rule permits only an inference of *negligence;* it does not establish causation, *Downs v. Longfellow Corp.,* 351 P. 2d 999 (Okla. 1960), and is therefore not applicable when the cause is unknown or more than one inference can be drawn as to causation. *See, Kekelis v. Machine Works,* 273 N.C. 439, 160 S.E. 2d 320 (1968). Therefore, the rule cannot be utilized to supply proof of the cause of the fire.

[3] Even if we assume, *arguendo,* that the fire was electrical in origin, *res ipsa loquitur* does not apply when the plaintiff cannot establish that the instrumentality causing the damage was in the exclusive control of the defendant. Annot., 169 A.L.R. 953 (1947). Here the defendant did not possess sole control over the wiring. The plaintiff's father testified that he had tampered with the meter box, and the defendant's witnesses testified that the riser wire belonged to and was supplied by the customer. Therefore,

the doctrine of *res ipsa loquitur* does not apply. *Trull v. Well Co.*, 264 N.C. 687, 142 S.E. 2d 622 (1965); *Lea v. Light Co.*, 246 N.C. 287, 98 S.E. 2d 9 (1957); *Hopkins v. Comer*, 240 N.C. 143, 81 S.E. 2d 368 (1954); *Smith v. Oil Corp.*, 239 N.C. 360, 79 S.E. 2d 880 (1954); *see, Kekelis v. Machine Works, supra.*

The plaintiffs' evidence failed to raise more than a speculation as to the cause of the fire, and the doctrine of *res ipsa loquitur* is not applicable to the facts of this case since the cause of the fire was not established and the defendant did not have exclusive control over the electrical equipment. Therefore, the trial court erred in failing to direct a verdict in favor of the defendant.

The judgment in favor of the plaintiffs is vacated and the case is remanded for entry of a directed verdict in favor of defendant.

Judges MITCHELL and WEBB concur.