IN THE SUPREME COURT OF NORTH CAROLINA

No. 303A20-2

Filed 17 October 2025

ESTATE OF MELVIN JOSEPH LONG, by and through MARLA HUDSON LONG, Administratrix,

v.

JAMES D. FOWLER, individually; DAVID A. MATTHEWS, individually; and DENNIS F. KINSLER, individually.

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 295 N.C. App. 307 (2024), affirming an order entered on 25 January 2023 by Judge John M. Dunlow in Superior Court, Person County. Heard in the Supreme Court on 12 February 2025.

>*Sanford Thompson, PLLC, by Sanford W. Thompson IV, and Hardison & Cochran, PLLC, by John Paul Godwin, for plaintiff-appellant.*

>*Phelps Dunbar LLP, by Patrick M. Meacham and Jonathan E. Hall, for defendant-appellees.*

BERGER, Justice.

Melvin Joseph Long was injured while working on an over-pressurized chiller unit on the campus of North Carolina State University. Long ultimately died from his injuries, and his estate filed a wrongful death action in Superior Court, Person County. The trial court granted defendants' motion for summary judgment. The Court of Appeals affirmed the trial court, holding that the unfortunate series of events which led to decedent's death were not foreseeable.

The uncontradicted evidence in the record, including the testimony of plaintiff's expert, demonstrates that the decedent's death was the tragic result of an unforeseeable sequence of events, and foreseeability is "a requisite of proximate cause, which is, in turn, a requisite for actionable negligence." *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233 (1984). We, therefore, affirm.

## I. Factual and Procedural Background

Defendants are employees in the HVAC and maintenance department of North Carolina State University. In 2016, NCSU initiated a construction project at the Monteith Research Center on the Centennial Campus of NCSU. Quate Industrial Service, Inc., an industrial equipment contractor that serviced boilers, chillers, and pressure vessels, was subcontracted to work on the project.

Specifically, Quate worked on an industrial chiller owned by NCSU that was used to cool the Monteith Research Center. The unit was manufactured by Carrier Global Corporation, and the chiller provided cooling through its two cooling circuits, which were composed of a chiller barrel containing water cooling tubes and high-pressure refrigerant. The chiller passed water through copper tubes, and the water was cooled by the refrigerant outside of the tubes.

While the chiller was in use and connected to electricity and water, it had three pressurized components. First, the cooling circuits contained a refrigerant that was stored at a high pressure to ensure that the refrigerant remained in a liquid state. Second, the chiller created vacuum forces to draw water from the building into the

cooling circuits. Third, the chiller used pressure to push water from the cooling circuits into the building. Valves on the unit helped to ensure that the vacuum and pressure forces did not enter the opposite side. Additionally, the copper pipes within the chiller prevented the pressurized refrigerant from escaping into the other components.

When the unit was winterized during the cold months, the chiller had to be drained to prevent water from freezing and damaging the copper cooling tubes. Carrier Global provided an operation instruction manual and placed similar instructions on the machine itself concerning proper preparation and drainage of the chiller. These instructions stated that the chiller should be drained and filled with five gallons of antifreeze to prevent "freeze-up damage to the cooler tubes." In other words, the instruction manual and warning labels recommended adding antifreeze to prevent mechanical damage to the unit's mechanisms, not to prevent any personal injury. Though the instruction manual warned of various potential causes of personal injury or death during use or maintenance, the manual contained no specific warnings regarding the potential for personal injury caused by pressure build-up beyond a notice that "[i]nstalling, starting up, and servicing this equipment can be hazardous due to system pressures, electrical components, and equipment location."

On 19 December 2016, a maintenance supervisor for NCSU directed defendants to drain and prepare the chiller for relocation, which defendants James Fowler and David Matthews did on 21 December 2016. However, they did not read

the instruction manual, nor were they instructed on the winter shutdown process. Because of this, they did not properly fill the unit with antifreeze. Instead, Fowler and Matthews drained the chiller until the flow of water became a trickle and then performed a "nitrogen purge." This procedure uses pressurized nitrogen gas to push the water remaining in the chiller out of the water intake and outlet pipes.

On 3 January 2017, Fowler and Matthews returned and sealed the water intake and outlet pipes with thirteen-pound industrial caps known as "flanges." After the flanges were attached, the chiller sat inactive for approximately three weeks in January 2017. During this time, temperatures in Raleigh dropped below freezing and the water left in the chiller's tubes froze and expanded, bursting the tubes. This allowed high pressure refrigerant to enter the tubes, causing the unit to pressurize.

On 20 January 2017, a maintenance supervisor for NCSU instructed staff to remove the flanges, move the chiller closer to the Monteith Research Center, and reinstall the unit. Decedent, who was an OSHA-certified pipefitter assigned to the project as a site supervisor for Quate, was tasked with this assignment. Decedent had extensive training on site safety through a thirty-hour OSHA class and multiple third-party training sessions provided through his employer. Decedent was aware of the hazards presented by pressurized machines and was specifically trained to double-check pressure valves, to not stand in front of caps while removing them, and to independently verify mechanisms and safeguards prior to beginning work on equipment.

When decedent and Nate Weston, another Quate employee, first arrived at the chiller to complete the assignment, they checked the relevant gauges on the unit. The gauge on the suction side registered vacuum forces and the gauge on the pressure side registered pressure forces. Decedent inspected the pressure gauges, and they indicated there was no pressure built up within the unit. Neither decedent nor Weston checked the unit's pressure relief valves. Decedent then loosened the bolt on the first flange, which was on the suction side of the chiller, with a wrench. After loosening the flange, decedent, who was standing in front of the flange at that time, attempted to attach a socket to the bolt. Unfortunately, the pressure within the chiller caused the thirteen-pound flange to separate from the connection point with explosive force and act as a projectile, striking decedent in the face and head. Decedent passed away from his injuries five days later.

Following the incident, Carrier Global performed a test to assess what caused the flange to detach from the unit. The test revealed that water left in the chiller froze, resulting in cracking and bulging in the cooler tubes. Due to the cracking and bulging, refrigerant was able to get into the cooler tubes and pressurize them. Carrier Global determined that the flanges installed on 3 January 2017 prevented the pressurized refrigerant from escaping once it entered the cooler tubes.

On 13 November 2018, plaintiff, the administratrix of decedent's estate, initiated this wrongful death action. On 3 May 2019, the trial court granted defendants' motion to dismiss based on the doctrine of sovereign immunity. A divided

panel of the Court of Appeals reversed, holding that the complaint sufficiently alleged claims for negligence and punitive damages and that sovereign immunity did not bar plaintiff's claim. *Long v. Fowler*, 270 N.C. App. 241, 245–53 (2020). This Court affirmed the Court of Appeals in a divided opinion. *Long v. Fowler*, 378 N.C. 138, 142–55 (2021).

On remand to the trial court, the parties conducted discovery, which revealed that three of the six defendants only worked on electrical issues with the chiller unrelated to the cooling circuits. Plaintiff voluntarily dismissed claims against those three defendants. Plaintiff also dismissed claims for punitive damages.

On 26 December 2022, defendants moved for summary judgment on all of plaintiff's remaining claims. The trial court granted defendants' motion on 25 January 2023, determining that no genuine issue of material fact existed and that defendants were entitled to judgment as a matter of law. Plaintiff appealed, arguing the trial court erred in granting summary judgment because genuine issues of material fact existed regarding the foreseeability of decedent's injury.

A divided panel of the Court of Appeals affirmed the trial court, holding that "the uncontested facts show the accident was an unforeseeable result of [d]efendants' failure to use antifreeze, and thus [d]efendants' conduct could not be the proximate cause of [d]ecedent's death." *Long v. Fowler*, 295 N.C. App. 307, 316 (2024). The Court of Appeals' majority further held that even if a genuine issue of material fact existed as to whether the injuries were reasonably foreseeable, decedent's

"contributory negligence is sufficient to warrant summary judgment and bar recovery." *Id.*

A dissent in the Court of Appeals argued that summary judgment was inappropriate because a triable issue of fact existed regarding the foreseeability of decedent's injury and because defendants' evidence on contributory negligence was "not so conclusive as to render there no genuine issue of material fact on this point." *Id.* at 329–31 (Hampson, J., dissenting). Plaintiff timely appealed under the now repealed statute providing for an appeal of right based on a dissent in the Court of Appeals. *See* N.C.G.S. § 7A-30(2) (2023), *repealed by* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d)–(e). As plaintiff's appeal was docketed at the Court of Appeals prior to the repeal's effective date, her appeal is properly before this Court.

## II. Standard of Review

"We review de novo an appeal of a summary judgment order. When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *N.C. Farm Bureau Mut. Ins. Co. v. Herring*, 385 N.C. 419, 422 (2023) (cleaned up).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023). In cases involving

negligence and contributory negligence, summary judgment is rarely appropriate. *DiOrio v. Penny*, 331 N.C. 726, 729 (1992). However, summary judgment is proper when "the moving party carries his initial burden of showing the nonexistence of an element essential to the other party's case and the non-moving party then fails to produce or forecast at hearing any ability to produce at trial evidence of such essential element of his claims." *Terry v. Pub. Serv. Co. of N.C., Inc.*, 385 N.C. 797, 801 (2024) (cleaned up). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428 (1989).

## III.    Discussion

Plaintiff argues the Court of Appeals erred in affirming the trial court's grant of defendants' motion for summary judgment because genuine issues of material fact exist concerning whether defendants proximately caused decedent's injuries.[1]

"Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances . . . ." *Moore v. Moore*, 268 N.C. 110, 112 (1966). "[T]o establish actionable negligence, a plaintiff must show that: (1) the defendant failed to exercise due care in the performance of some legal duty owed to the plaintiff under the circumstances; and (2) the negligent

---

[1] Plaintiff also argues the Court of Appeals erred in affirming the trial court's grant of defendants' motion for summary judgment on the basis that decedent was contributorily negligent. As the Court of Appeals' holding regarding contributory negligence was an alternative ground to sustain the grant of summary judgment, and as we affirm the Court of Appeals' primary holding regarding proximate cause, we address only plaintiff's first argument.

breach of such duty was the proximate cause of the injury." *Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Heath & Hum. Servs.*, 383 N.C. 31, 61 (2022) (cleaned up). Proximate cause is "a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary prudence could have reasonably foreseen that such a result or some similar injurious result was probable." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 464 (2022) (cleaned up).

"Foreseeability of injury is an essential element of proximate cause." *McNair v. Boyette*, 282 N.C. 230, 236 (1972) (cleaned up). To establish that the injury was foreseeable, a plaintiff must prove that "in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *White v. Dickerson, Inc.*, 248 N.C. 723, 732 (1958) (cleaned up); *see also Byrd v. S. Express Co.*, 139 N.C. 273, 275 (1905) (stating that a plaintiff has the burden "to show that defendant's alleged negligence proximately caused [the decedent's] death, and the proof should have been of such a character as reasonably to warrant the inference of the fact required to be established, and not merely sufficient to raise a surmise or conjecture as to the existence of the essential fact").

A defendant need not predict the particular consequences which ultimately result from his negligence; rather, all that foreseeability requires is that "a person of ordinary prudence could have reasonably foreseen that a . . . similar[ly] injurious result was probable" under the facts as they existed. *Keith*, 381 N.C. at 464 (cleaned

up).

But a defendant is not required to anticipate events which are merely possible rather than reasonably foreseeable. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 234 (1984) (citing *Bennett v. R.R.*, 245 N.C. 261 (1957)). "The law does not charge a person with all the possible consequences of his negligence, nor that which is merely possible." *Phelps v. City of Winston-Salem*, 272 N.C. 24, 30 (1967). "If the connection between negligence and the injury appears unnatural, unreasonable and improbable in the light of common experience, the negligence, if deemed a cause of the injury at all, is to be considered a remote rather than a proximate cause." *Id.*

Here, the Court of Appeals concluded that no genuine issue of material fact existed regarding proximate cause because "the record contains uncontested facts showing that it was not reasonably foreseeable that [d]efendants failing to put antifreeze in the chiller would result in catastrophic injury to [d]ecedent." *Long*, 295 N.C. App. at 313. In so reasoning, the Court of Appeals' majority relied on uncontroverted evidence that no person within this action had expected or heard of an accident like this occurring, and noted that even if defendants had read the manual, "the manual and labels only warned of damage to the chiller if it became pressurized, not of danger to those working on it." *Id.* at 314.

Plaintiff contends the Court of Appeals erred in reaching this conclusion because, based on the evidence presented and forecasted, a genuine issue of material

fact exists as to whether defendants could have reasonably foreseen that failing to fill the tubes with antifreeze and capping the water system during winter could cause some injury to decedent. Plaintiff makes three specific arguments on appeal to this Court.

First, plaintiff argues defendants' training and experience should have led them to reasonably foresee that injury could result from system pressures within the chiller. But as the Court of Appeals' majority correctly explained, the undisputed facts within the record demonstrate that the injury decedent suffered was the result of unexpected pressure. The record evidence demonstrates that defendants, their coworkers, their employer, and even plaintiff's own expert testified that the improbable chain of events that occurred, including the de-energized chiller becoming pressurized due to a chemical reaction caused by cracked cooler tubes, was completely unexpected. Under these circumstances, where individuals with greater training and experience than defendants could not have predicted or anticipated that failing to add antifreeze would lead to decedent's injury, we cannot conclude that defendants, because of their training and experience, should have reasonably foreseen the improbable injury to decedent.

Plaintiff also argues a genuine issue of material fact exists regarding the foreseeability of decedent's injury because defendants "figured out" how the accident happened after it occurred. According to plaintiff, defendants "could have figured out and foreseen the danger of the cap exploding under system pressure *before* the

incident since Fowler figured it out *afterwards*." This reasoning, which imputes precognition to Fowler, would practically eliminate the proximate cause requirement. Accident investigations routinely reveal the sequence of events leading to an injury, and an individual's ability to understand that sequence after the causes are revealed has no bearing on whether he or she should have reasonably foreseen that sequence prior to the accident. Plaintiff's argument is therefore without merit.

Finally, plaintiff asserts that the Carrier Global instruction manual and the warning labels attached to the unit warned of injuries that could result from system pressures. However, beyond a statement in the manual that "[i]nstalling, starting up, and servicing this equipment can be hazardous due to system pressures," neither the manual nor the warning labels warned that personal injury could result from system pressures, nor did they warn that pressure could accumulate via cracked cooler tubes. The manual and labels did not warn of a danger to those working on the chiller or caution individuals working on a pressurized chiller that injuries could occur. As the Court of Appeals noted, plaintiff's own expert addressed this very issue:

> Q: And nowhere in the manual does it state that a failure to properly winterize the machine or add antifreeze, properly drain it, fully drain it, nowhere does it say that may present a hazard to humans, true?
>
> A: It does not specify hazard to humans in that verbiage.
>
> Q: It never talks about it being a safety concern, does it?
>
> A: It discusses it as a damage to the unit, correct.
>
> Q: And, again, so it does not discuss it as being a safety

concern—

A: Not as a safety concern.

Thus, even if defendants had read the manual or the labels prior to performing the nitrogen purge in lieu of adding antifreeze, the manual or labels would not have led them to reasonably foresee the injury to decedent. Not all tragic accidents are the result of legally actionable negligence, and the law does not require individuals to anticipate a chain of improbable, unpredictable, and unexpected events. The uncontradicted evidence demonstrates this accident resulted from exactly such an unforeseeable sequence of events, and we therefore affirm the decision of the Court of Appeals.

## IV.   Conclusion

On the issue of negligence and proximate cause, we affirm the decision of the Court of Appeals. Because the Court of Appeals' discussion of contributory negligence was an alternative basis, relevant only if plaintiff prevailed on her proximate cause arguments, we decline to review that issue.

AFFIRMED.

Justice EARLS dissenting.

It is no accident that the majority opinion is almost entirely a recitation of the facts in this case. Instead of allowing a jury to decide whether it was reasonably foreseeable that Mr. Joe Long would be injured when clear warnings of danger on the side of the industrial chiller and in its manual were disregarded, the Court takes it upon itself to decide foreseeability and proximate cause. If sitting in the jury box, the majority's views would have salience. But the appellate courts are not the place to decide the facts of this case. It is cruel and heartless to acknowledge the tragedy of Mr. Long's injury and death while simultaneously denying his estate the opportunity to have their claim determined by a jury of twelve, as the State Constitution requires. *See* N.C. Const. art. I, § 18 ("All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due court of law; and right and justice shall be administered without favor, denial, or delay."); N.C. Const. art. I, § 25 ("[T]he ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable."). Ignoring blackletter law, the majority wrongfully closes the courthouse door to Mr. Long's family.

The basic principles of blackletter law applicable here are as follows.

(1) On defendants' summary judgment motion, the facts and all reasonable inferences are to be taken in the light most favorable to Mr. Long's estate

as the non-moving party. *E.g.*, *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482 (2020).

(2) Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023). "The court should never resolve an issue of fact." *Kidd v. Early*, 289 N.C. 343, 352 (1976).

(3) Proximate cause and foreseeability determinations should be determined by the jury unless extraordinary circumstances are present. *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403 (1979).

Taken in the light most favorable to Mr. Long's estate, the facts concerning the central issue of whether the injury was foreseeable are in dispute. There are multiple reasonable interpretations of the evidence on foreseeability. The estate's evidence included the fact that the chiller's manual warned of the risk of personal injury. There were bright yellow and black stickers on the outside of both chiller barrels that read:

> FREEZE WARNING!
> It is not possible to drain all water from this heat exchanger! For freeze protection during shut-down, exchanger must be drained and refilled with 5 gals Glycol min.
> TRAPPED WATER!

Defendants admit they did not consult the manuals or stickers nor fill the barrels with antifreeze. Defendants did not fill the tubes with antifreeze or remove the high-pressure gas surrounding the tubes. Thus, the question is whether it was reasonably foreseeable that damaged tubes could cause personal injury. The question is not whether some other person previously negligently failed to heed these warnings and it led to a similar death. The foreseeability of injury in these circumstances is exactly the type of question that our legal system leaves to the wisdom of twelve citizens who hear the evidence in a courtroom and deliberate together until they reach a decision. Therefore, summary judgment is not appropriate here, and the case should be remanded for trial.

"It is well settled that the test of foreseeability as an element of proximate cause does not require that defendant should have been able to foresee the injury in the precise form in which it actually occurred." *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233–34 (1984); *see Hall v. Coble Dairies*, 234 N.C. 206, 210 (1951) (same); *McIntyre v. Monarch Elevator & Mach. Co.*, 230 N.C. 539, 544 (1949) (same). On the question of foreseeability related to proximate cause, the plaintiff must show that "in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *Hairston*, 310 N.C. at 234 (cleaned up). Typically, "the question of foreseeability is one for the jury." *Slaughter v. Slaughter*, 264 N.C. 732, 735 (1965); *McIntyre*, 230 N.C. at 545 (noting that rarely is the court

justified in deciding proximate cause as a matter of law). Despite these clear precedents, the majority instead would require Mr. Long's estate to demonstrate that this precise injury had occurred from the exact same negligence in past before proximate cause can be established. The law does not impose such a high burden on those who are injured by the negligent acts of another.

## I. Factual Background

Decedent Mr. Melvin Joseph Long worked at Quate Industrial Service, Inc. (Quate) for over ten years as an OSHA-certified pipefitter. Defendants Mr. Dennis Kinsler, Mr. James Fowler, and Mr. David Matthews (collectively, defendants) were service technicians employed by North Carolina State University (NCSU). Mr. Kinsler worked at NCSU as an "HVAC Advanced Technician" from 2012 to 2017. Mr. Fowler worked as an "HVAC Mechanic" beginning in 2014. Mr. Matthews was a "Field Maintenance Technician," working on HVAC equipment and supporting HVAC technicians.

In December 2016, based upon a service request from Quate, an NCSU supervisor issued a work order instructing NCSU service technicians to "PLEASE DRAIN AND SECURE CARRIER CHLLER FOR RELOCATION." At the supervisor's direction, Mr. Kinsler assigned Mr. Fowler and Mr. Matthews to drain the water from the chiller. Mr. Kinsler also instructed them to perform a "nitrogen purge" which blows nitrogen through the water piping after the water is drained.

Mr. Kinsler admittedly did not review the chiller's manual prior to making the

assignment. However, the chiller's manual stated that fluid would remain in the cooler after draining. The maintenance manual required filling the water pipes with an antifreeze solution when the chiller is shutdown during winter months. The front cover of the operations manual contained a warning section on potential damage to heat exchanger tubes stating that "Misuse can be fatal."

On 21 December 2016, Mr. Fowler and Mr. Matthews drained the chiller until the flow of water became a trickle and performed the nitrogen purge. They did not fill the chiller with a glycol, or antifreeze, solution.

On 3 January 2017, Mr. Fowler and Mr. Matthews secured the inlet and outlet pipes on the chiller by installing Victaulic caps and couplings. Between 3 January 2017 and 20 January 2017, Raleigh experienced below-freezing temperatures. This caused water in the chiller's pipes to freeze and expand, bursting the pipes and allowing high-pressure refrigerant, 134A to escape into the water system, causing the water side of the chiller to become pressurized. Subsequent eddy testing of the chiller showed a large number of damaged pipes in the chiller.

On 20 January 2017, Mr. Long and Mr. Nate Weston, another Quate employee, were tasked with removing the caps and Victaulic couplings and reconnecting the chiller to the chilled water system. Mr. Long and Mr. Weston checked the chiller's pressure gauges located at various points on the exterior of the chiller, all of which read zero. The chiller was not connected to water or electricity, and because the pressure gauges read zero, the system did not appear to be pressurized. When Mr.

Long and Mr. Weston began removing one of the caps from the chiller's outlets, there was no indication that the chiller was pressurized—no smell, and no sound of gas escaping from the cap. As Mr. Long loosened the coupling, the six-inch, thirteen-pound solid steel cap flew off, striking him in the face and head. Mr. Long died five days later from his injuries.

## II.    The Foreseeability of Mr. Long's Injury Is a Jury Question

Foreseeability of some injurious consequence of one's act is an essential element of proximate cause. *Sutton v. Duke*, 277 N.C. 94, 107 (1970). It is only in exceptional cases, in which reasonable minds cannot differ as to the foreseeability of an injury, that a court should decide proximate cause as a matter of law. *Williams*, 296 N.C. at 403. Put more succinctly, the jury should determine proximate cause/foreseeability issues unless "only one inference may be drawn" from the facts. *Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214 (1944).

This principle has been blackletter law dating back over eight decades. *Id.* at 214 ("[W]hat is the proximate cause of an injury is ordinarily a question for the jury[;] [i]t is to be determined as a fact in view of the circumstances of fact attending it." (quoting *Milwaukee & St. P.R. Co. v. Kellogg,* 94 U.S. 469, 474 (1876))). "Virtually every appellate opinion dealing with [proximate cause] includes a statement that the question is ordinarily one for the jury." Mark W. Morris, *North Carolina Law of Torts* § 16.80 (4th ed. 2023). The majority's decision marks a glaring departure from this fundamental principle.

Here, the facts allow a reasonable mind to draw very different inferences as to the foreseeability of the injury, so the question should be left to the jury instead of this Court taking the extraordinary step of substituting its judgment for that of a jury. Reasonable people could draw opposite conclusions as to whether injury to a person was foreseeable from system pressurization based on the warnings included in the Carrier Global Instruction Manual, which included that "Installing, starting up, and servicing this equipment can be hazardous . . . . Only trained, qualified installers and service mechanics should . . . service this equipment."

Jurors also could make either of two opposing but reasonable inferences from defendants' deposition testimony: (1) their lack of knowledge of any previous occurrence of this injury means they could not have reasonably foreseen the injury; or (2) their knowledge of the process of creating a pressurized system makes it reasonably foreseeable that they knew an injury like this one could have occurred due to their failure to use antifreeze.

This Court has left the proximate cause/foreseeability determination to the jury in more attenuated circumstances than those at issue here. For example, in *Hairston*, we determined that a jury should decide whether a car dealer's failure to properly install a wheel proximately caused the car driver's death, where the dysfunctional wheel caused the car to malfunction on the highway, causing the driver to have to stop on the highway and be helped by a second driver just before a third driver crashed into the second driver's car, killing the first driver. 310 N.C. at 235.

The Court upheld the jury's determination that the dealer was liable, because the jury could conclude that the injury was reasonably foreseeable. *Id.*

In *Williams*, we held that a jury should determine whether it was reasonably foreseeable under the circumstances that a house repairman would be electrocuted by uninsulated wires maintained by a power company after his ladder inadvertently touched the wires some distance from the house he was repairing. 296 N.C. at 403. We reaffirmed that summary judgment was not appropriate in such circumstances. *Id.*

These cases indicate our longstanding presumption that juries should make proximate cause and foreseeability determinations—which weighs in favor of giving the issue to the jury when it is a close call. This Court emphasized in *Hairston* that it is "rarely the case" that a trial judge should take the proximate cause issue from the jury. 310 N.C. at 235 (quoting *Conley*, 224 N.C. at 214). "[I]t is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law." *Williams*, 296 N.C. at 403.

Here, the forecast evidence establishes a genuine issue of material fact regarding the foreseeability of Mr. Long's injury, so summary judgment is not appropriate. *See id.* Defendants' deposition testimony indicated that defendants did not consult the chiller's manual or warnings prior to draining the system. Mr. Fowler testified that he did not look at the manual before he drained water from the chiller in December 2016. Mr. Kinsler testified that he had never looked at the operation

manual and had no idea about the manual. Mr. Matthews also testified that he could have found the manual if he wanted to review it. Defendants' argument that they lacked the training or knowledge to foresee the injury leaves open the possibility that a reasonably prudent and properly trained technician could foresee personal injury from damage to the chiller due to pipes breaking in freezing weather.

There is also conflicting testimony by the experts and defendants as to whether they should have foreseen a risk of injury. It is axiomatic that questions of witness credibility should be resolved by a jury. *E.g.*, *State v. Caballero*, 383 N.C. 464, 476 (2022). The estate forecast evidence that the manual, and the chiller's warning labels, should have put defendants on notice of the hazard associated with tube breakage from freezing. The estate emphasized that the chiller's manual and stickers "specifically warned the cooler tubes surrounded by high pressure refrigerant would break if water was left to freeze." Mr. Fowler's affidavit stated that he recalled consulting the chiller's manual "from time to time before December 2016." But later the same affidavit states that Mr. Fowler "never had a reason to review" the chiller's manual. Additionally, during his deposition, he testified that he did not look at the manual before he drained the water from the chiller in December 2016. These are material conflicts that go to the jury.

Additionally, defendants asserted that they could not have foreseen this injury, but evidence forecast that Mr. Matthews knew from his HVAC experience that water in a tube, if allowed to freeze, could break the tube; and if the tube was surrounded

by refrigerant, the refrigerant would get in. Mr. Fowler knew that refrigerant could become pressurized and be expelled through an opening with force. "[I]f the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied, and the case allowed to proceed to trial." *Kidd*, 289 N.C. at 367–68. That basic principle applies here and precludes summary judgment for defendants.

The majority implies that personal injury from the misuse of this machine was not foreseeable where the manual only warned of "mechanical damage." But it is clear from our precedents that the precise type of injury does not need to be foreseeable. In *Slaughter*, this Court held that "[i]t is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected." 264 N.C. at 735. There, the defendant shot firecrackers near his home to frighten his children, and the plaintiff—who had care over the defendant's children—sustained injuries when she fell while attempting to flee what she thought was gunfire. *Id.* at 736. The defendant argued that "plaintiff's fall and resulting injuries were not . . . reasonably foreseeable," and that they were "unusual and unlikely results of his conduct." *Id.* at 735. This Court disagreed and sustained the jury's verdict for plaintiff, because the defendant should have foreseen some injury from his conduct. *Id.*

Defendants argued that *Slaughter* is not applicable here because while the

defendant in *Slaughter* intended to frighten his children, defendants here did not intend to cause inadvertent pressurization. They intended only to drain and cap the chiller. But the question is not whether defendants intended the specific harm, only whether "by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct," here defendants' failure to properly drain the chiller. *See id.* A jury could find facts to support that defendants failed to exercise proper care by reviewing and following the procedure in the chiller's manual. A jury should determine, on these facts, whether Mr. Long's injury was reasonably foreseeable because of defendants' failure to consult the chiller's manual about proper draining procedures and the potential for freezing damage.

*Sutton* also stands for the proposition that the actual injury does not need to be foreseeable, only that an injury to person or property could occur. 277 N.C. at 107–108. There the plaintiff allegedly sustained injuries when his car hit a mule standing in the highway. *Id.* at 97. The mule came to be on the highway after the defendants left open a gate to a pony enclosure. *Id.* The pony escaped and ran to where four mules were enclosed, the pony agitated the four mules, causing them to break out of their enclosure and travel three-fourths of a mile to the highway where the plaintiff was unable to avoid colliding with one of them and becoming seriously injured. *Id.* at 97. We held that it was a question of fact whether the plaintiff's injury was a reasonably foreseeable consequence of the defendants' negligence. *See id.* at 108. The majority is wrong to neglect any consideration of this precedent. It apparently cannot square its

decision with our caselaw, so it does not even try.

In summary, this case is not an exceptional one where "reasonable minds cannot differ" on whether Mr. Long's injury was foreseeable. *Williams*, 296 N.C. at 403. This Court has held that the duty of care does not require perfect prescience but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care. *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226 (2010). The estate forecast evidence that the chiller's manual and labels on the unit itself warned technicians about freezing risks and system pressures. Although the warning label did not specify a risk of pressurizing the waterside of the chiller, it is for the jury to determine whether a reasonably prudent HVAC technician should be aware of the risk of pipes freezing and bursting during the winter. Further, a jury should consider whether the warning on the chiller and the maintenance manual put the technician on notice of a risk of injury to persons.

Taken in the light most favorable to Mr. Long's estate, the forecast evidence establishes a genuine issue of material fact regarding the foreseeability of Mr. Long's injury. Because the estate has forecast evidence that an accident of this nature was foreseeable when the required procedures were not followed to winterize the unit, I would reverse the Court of Appeals' decision and remand for a jury to consider whether defendants are liable to the estate for Mr. Long's injury and death. The North Carolina Constitution demands no less.

Justice RIGGS joins in this dissenting opinion.